

Related PDJ

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

FEB 1 5 2023

CENTRAL DISTRICT OF CALIFORNIA
BY      OTA      DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES DANIEL ALEXANDER,

    Plaintiff,

v.

JERRY BROWN, former Governor of California, as an individual; KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitations (CDCR) as an individual; JEFFREY A BEARD, Secretary of CDCR, as an individual; SCOTT KERNAN, Secretary of CDCR, as an individual; RALPH DIAZ, Secretary of CDCR, as an individual; JENNIFER SHAFFER, Executive Director of the California Board Of Parole Hearings (BPH), as an individual; KEVIN STRIPLING, BPH Scheduler, as an individual; M.D. STAINER, Director of Adult Division for CDCR, as an individual; M. VOONG, Chief Appeals Coordinator, as an individual; G. MURPHY, Appeals Coordinator (Headquarters), as an individual; RAYMOND MADDEN, Warden (Centinela State Prison), as an individual; J. GASTELO, Warden (California Men's Colony State Prison), as an individual;  P. DENNY, Associate Warden (California Men's Colony State Prison), as an individual; R. GIBSON, Correctional Counselor II, at California Men's Colony State Prison (CMC), as an individual; M. DENBY,  Correctional Counselor I, California Men's Colony State Prison (CMC), as an individual; L. CHAUNCEY, local BPH official at CMC, as an individual; T. N ELSON, local BPH

CASE No: 8:23cv 274-JFW-SHK

**CIVIL RIGHTS COMPLAINT, 42 USC § 1983**

1. **GOVERNMENTAL INTERFERENCE WITH FREE SPEECH**
2. **GOVERNMENTAL INTERFERENCE WITH RIGHT TO BEAR ARMS**
3. **DUE PROCESS**
4. **EQUAL PROTECTION**
5. **CRUEL AND UNUSUAL PUNISHMENT**

**DEMAND FOR JURY TRIAL**

---

**CIVIL RIGHTS COMPLAINT, 42 USC § 1983**

1

official at CMC, as an individual; D. ROBINSON, local BPH official at CMC, as an individual; D. DON, local BPH official at CMC, as an individual; C. AZEVEDO, local BPH official at CMC, as an individual; L. MARTINEZ, local BPH official at CMC, as an individual; S. HOPKINS, local BPH official at CMC, as an individual; and DOES 1-50, inclusive,

Defendants.

James Alexander
2817 S. Fairview Street, Unit H
Santa Ana, CA 92704
(714) 868-9702
thereal2021jamesalexander@gmail.com

Plaintiff, in pro per

CIVIL RIGHTS COMPLAINT, 42 USC § 1983

## JURISDICTION AND VENUE

1.      This is civil rights action for compensatory, injunctive, and declaratory relief, and damages (including, but not limited to special, exemplary, and punitive damages), pursuant to 42 U.S.C. § 1983, and based upon violations of Plaintiffs' rights that are protected under the First, Second, Eighth, and Fourteenth Amendments of the United States Constitution.

2.      Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343, based on 42 U.S.C. §1983, and questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the United States District Court, Central District of California, in that the events and conduct complained of herein all occurred within the jurisdiction of Central District of California.

4.      The two-year statute of limitations to bring this civil rights action before the Court was tolled under California Code of Civil Procedure § 352.1, where the plaintiff was incarcerated throughout the duration of time in which the civil rights violations occurred and was, ultimately, released from state custody onto parole on February 17, 2021.

## PARTIES

5.      Plaintiff James Daniel Alexander (hereinafter "Plaintiff") is an American citizen that is currently residing within the State of California, County of Orange.

6.      Defendant Jerry Brown was the Governor of the State of California, and was the top governmental official of the California Department of Corrections and

---

Rehabilitations (CDCR), and the California Board of Parole Hearings (BPH) within and between the years of 2010 and 2018.

7.    Defendant Kathleen Allison was the Secretary of the CDCR within and between the year of 2020.

8.    Defendant Jeffery A. Beard was the Secretary of the CDCR within and between the years of 2012 and 2016.

9.    Defendant Scott Kernan was the Secretary of the CDCR within and between the years of 2015 and 2016.

10.   Defendant Ralph Diaz was the Secretary of the CDCR within and between the years of 2018 and 2019.

11.   Defendant M.D. Stainer was the Director of Adult Divisions for the CDCR within and between the years of 2016 and 2018.

12.   Defendant Raymond Madden was the Warden at Centinela State Prison (CSP) within and between the years of 2016 and 2017.

13.   Defendant J. Gastelo was the Warden at California Men's Colony State Prison (CMCSP) within and between the years of 2017 and 2018.

14.   Defendant P. Denny was an Associate Warden at CMC within and between the years of 2017 and 2018.

15.   Defendant M. Voong was the Chief, Appeals Coordinator for the CDCR within and between the years of 2017 and 2020.

16.   Defendant G. Murphy was an Appeals Coordinator for the CDCR within and between the years of 2017 and 2018.

17.   Defendant R. Gibson was a Correctional Counselor II (CC II) at CMC within and between the years of 2017 and 2020.

18.   Defendant M. Denby was a Correctional Counselor I (CCI) at CMC within and between the years of 2017 and 2020.

19.   Defendant Jennifer Shaffer was the Executive Director of the BPH within and between the years of 2016 and 2020.

20.   Defendant Kevin Stripling was the Chief Scheduler for the BPH within and between the years of 2018 and 2020.

21.   Defendant L. Chauncey was a CCII for the BPH at CMC within and between the years of 2018 and 2020.

22.   Defendant T. Nelson was a BPH official at CMC within and between the years of 2018 and 2020.

23.   Defendant D. Robinson was a BPH official at CMC within and between the years of 2018 and 2020.

24.   Defendant D. Don was a BPH official at CMC within and between the years of 2018 and 2020.

25.   Defendant C. Azevedo was a BPH official at CMC within and between the years of 2018 and 2020.

26.   Defendant L. Martinez was a BPH official at CMC within and between the years of 2018 and 2020.

27.   Defendant S. Hopkins was a BPH official at CMC within and between the years of 2018 and 2020.

28.    The true names and capacities of Defendants named herein DOES 1 through
50 are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.
Plaintiff will amend the Complaint to show the true names and capacities of such DOES
when they have been found what their names are to be. Plaintiff is informed and believes,
and thereupon alleges, that each of DOES 1 through 50 were responsible in some manner for
the occurrences and acts herein alleged, and that Plaintiff's damages and violations of
Plaintiff's rights were actually and proximately caused by such DOE defendants.

29.    Plaintiff is informed and believes and thereon alleges that, at all times
mentioned herein, Defendants were the agents, servants, representatives, partners and/or
employees of co-Defendants, and, by engaging in the actions mentioned below, were, unless
otherwise alleged, acting within the course and scope of their authority as such agent,
servant, representative, partner, and/or employee, with the permission and consent of co-
Defendants.

**30.**    Any allegations about acts of any corporate or other business, "Defendants"
means that the corporation or other business did the alleged acts through its officers,
directors, employees, agents, and/or representatives, while acting within the actual or
ostensible scope of their authority.  This is an action brought by Plaintiff to remedy the
damages caused by Defendants' violations of the United States Constitution, federal and
California statutory law, which resulted from negligent, unfair, and unlawful acts.

## STATEMENT OF FACTS

31.    On or about January 26, 1996, Plaintiff was sentenced to a thirty-year-to-life
sentence under the California Three Strikes Law.

32.    Plaintiff received a 30-year-to-life sentence after being convicted for one count of non-violent residential burglary.

33.    Plaintiff, for purposes of this civil rights complaint, will be designated under the classification of "Non-Violent Third Strike" (NVTS) prisoner.

34.    On or about November 8, 2016, the California voters passed a ballot initiative called "Proposition 57" (Prop 57), which fundamentally revised the California Three Strikes Law.  Relevant to this civil complaint, Prop. 57 mandated that the CDCR and BPH provide early parole consideration (EPC) hearings to all NVTS prisoners.

35.    For several months preceding the November 8, 2016 election, the official advocates against Prop.57 proclaimed that the passage of Prop. 57 would mandate EPC hearings for any and all NVTS prisoners.

36.    On or about June 6, 2016, the California Supreme Court analyzed the language of Prop. 57 and declared that the passage of Prop. 57 would mandate EPC hearings for any and all NVTS prisoners.  (*Brown v. Superior Court* (2016) 63 Cal. 4th 335.)

37.    Immediately subsequent to the passage of Prop. 57, Plaintiff submitted written inquiries to the appropriate prison officials to request information regarding new CDCR and BPH policies which would reflect the will and intent of Prop. 57.

38.    After several attempts, Plaintiff was unable to receive any confirmation as to specific CDCR or BPH policy changes that would be implemented to reflect the will and intent of Prop. 57.

39.    On or about January 13, 2017, Defendant Brown released his 2017 California budgetary proposal, as it pertained to the CDCR and BPH.  The said budgetary proposal declared that no additional funding would be allocated to provide Non-Violent Third Strike

(NTVS) prisoners with an opportunity for an EPC hearing, regardless of the passage of

Prop. 57. The exclusion of NVTS prisoners within the 2017 budgetary proposal reflected

the administrative decision to arbitrarily deny NVTS prisoners of their state-created, liberty

interest right to an EPC hearing.

40.     On or about January 31, 2017, Plaintiff submitted a CDCR administrative

appeal (Appeal #1) at CSP to challenge Defendant Brown's decision to arbitrarily deny

NVTS prisoners of their state-created, liberty interest right to an EPC hearing. Essentially,

Appeal #1 addressed the administrative decision to arbitrarily deny NVTS prisoners of their

state-created, liberty interest right to an EPC hearing.

41.     On or about February 1, 2017, Appeal #1 was capriciously rejected without a

decision being rendered on the merits of the appeal. Appeal #1 was summarily rejected by

Defendant Gibson.

42.     On or about February 6, 2017, Plaintiff resubmitted Appeal #1 and explain that

the appeal should be reconsidered for review, where Plaintiff was being arbitrarily denied an

EPC hearing, based upon Defendant Brown's 2017 budgetary proposal.

43.     On or about February 7, 2017, Defendant Gibson capriciously rejected Appeal

#1 for a second time without a decision being rendered on the merits of the appeal.

44.     On or about February 10, 2017, Plaintiff resubmitted Appeal #1 for a third

time, after following the vague instructions of Defendant Gibson which accompanied the

second rejection of Appeal #1.

45.     On or about February 14, 2017, Defendant Gibson capriciously cancelled

Appeal #1, which prevented Plaintiff from resubmitting Appeal #1 for a fourth time.

Defendant Gibson claimed that Plaintiff failed to satisfactorily revise and correct the alleged
deficiencies of Appeal #1.

46.    Plaintiff, shortly thereafter February 14, 2017, mailed a tort claim form to the
state Board of Control for review of Appeal #1.  Plaintiff did not receive a response to the
tort claim form.

47.    On or about February 20, 2017, Plaintiff submitted a CDCR administrative
appeal (Appeal #2) to challenge the cancellation of Appeal #1.

48.    On or about April 3, 2017, Appeal #2 was arbitrarily rejected by Defendant
Madden, who supported the decision to cancel Appeal #1.

49.    Plaintiff, shortly thereafter April 3, 2017, mailed a tort claim form to the state
Board of Control for review of Appeal #2.  Plaintiff did not receive a response to the tort
claim form.

50.    On or about April 3, 2017, Plaintiff submitted a CDCR administrative appeal
(Appeal #3) which addressed the exclusion of NVTS prisoners from benefiting from newly
implemented EPC policies as a result of Prop. 57.

51.    On or about April 5, 2017, Appeal #3 was egregiously cancelled by Defendant
Gibson.  Defendant Gibson claimed that Appeal #3 addressed the same issues raised in
Appeal #1 and further review would not be permitted. .

52.    Plaintiff, shortly thereafter April 5, 2017, mailed a tort claim form to the state
Board of Control for review of Appeal #3.  Plaintiff did not receive a response to the tort
claim form.

53.    On or about April 18, 2017, Plaintiff submitted a CDCR administrative appeal
(Appeal #4) to challenge the arbitrary cancellation of Appeal #3.

54.    On or about May 17, 2017, Plaintiff submitted a CDCR administrative appeal (Appeal #5).  Appeal #5 addressed: (1) the erroneous calculation of Good Conduct Credits (GCC), as determined under new CDCR policies that were enacted as a result of Prop. 57; and (2) the exclusion of NVTS prisoners from newly proposed EPC policies that were to begin being implemented on July 1, 2017 as a result of Prop. 57.

55.    On or about May 31, 2017, Appeal #4 was arbitrarily denied by Defendant Madden, who supported the decision to cancel Appeal #3.

56.    Plaintiff, shortly thereafter May 31, 2017, mailed a tort claim form to the state Board of Control for review of Appeal #4.  Plaintiff did not receive a response to the tort claim form.

57.    On or about June 5, 2017, Defendant Denny arbitrarily denied Appeal #5, claiming that there was no miscalculation of Plaintiff's GCC, and that Plaintiff's exclusion from newly proposed EPC hearing policies was appropriate.

58.    On or about June 12, 2017, Plaintiff submitted Appeal #5 to the CMCSP Appeals Coordinators Office for the next level of review.

59.    On or about June 29, 2017, Appeal #5 was denied by Defendant Gastelo for the same reasons that were utilized by Defendant Denny.

60.    On or about July 1, 2017, the CDCR and BPH began the implementation of new policies which provided EPC hearings to Non-Violent Second Strike (NVSS) prisoners, but the new policies arbitrarily excluded NVTS prisoners from receiving their state-created, liberty interest right to an EPC hearing.

61.    On or about July 11, 2017, Plaintiff submitted Appeal #5 to CDCR headquarters for the last level of review.

---

CIVIL RIGHTS COMPLAINT, 42 USC § 1983

62.     On or about September 28, 2017, Defendant Murphy and Defendant M. Voong arbitrarily denied Appeal #5, claiming that the previous denials at the lower levels of review were appropriate.

63.     Plaintiff, shortly thereafter September 28, 2017, mailed a tort claim form to the state Board of Control for review of Appeal #5.  Plaintiff did not receive a response to the tort claim form.

64.     On or about October 4, 2017, Plaintiff attempted to submit an inmate appeal to the BPH to challenge the decision to arbitrarily deny him an EPC hearing, alleging that his exclusion was in direct violation of his state-created, liberty interest rights protected under both the state and federal constitutions.  Plaintiff's appeal was summarily rejected because it was alleged that the BPH did not accept and process administrative appeals submitted by prisoners.

65.     On or about September 7, 2018, the California Court of Appeal, Second Appellate District, Division Five, rendered a decision which declared that the CDCR and BPH were arbitrarily excluding NVTS prisoners from benefiting from the EPC hearing policies that were enacted as a result of Prop. 57.  (*In re Edwards* (2018) 26 Cal. App. 5th 1181.) The Court of Appeal decision also mandated the evaluation of NVTS prisoners for EPC hearing within 60 days from the Court's decision.

66.     On or about September 19, 2018, Plaintiff submitted an Inmate Request Form (which was the first level of appeal, in accordance with newly implemented CDCR regulations) to the CMCSP Records Office.  The said Inmate Request Form (IRF #1) respectfully requested a review of Plaintiff's prison file to confirm that he qualified for immediate EPC under *In re Edwards*.

67.    On or about September 25, 2018, Defendant Lawea responded to IRF #1 and
stated that "Proposition 57 regulations regarding the [NVTS prisoners] have not changed—
if any new direction from headquarters is received that will affect your eligibility, you will
be notified.

68.    On or about September 24, 2018, Plaintiff submitted another Inmate Request
Form (IRF #2)  to the CMCSP Case Service Representative.  This Inmate Request Form
respectfully requested the same review as the request submitted on September 19, 2018,
except the request was directed at a prison official who was recommended to Plaintiff by his
correctional counselor.

69.    On or about September 26, 2018, Defendant Chauncey responded to IRF #2
identical to Defendant Lawea and stated that "Prop. 57 regulations regarding [NVTS
prisoners] have not changed—if any new direction from headquarters is received that will
affect your eligibility, you will be notified."

70.    On October 7, 2018, Plaintiff submitted another Inmate Request Form (IRF
#3) to the CMCSP C.L.E.G.G. This Inmate Request Form respectfully requested the same
review as the request submitted on September 19, 2018 and September 26, 2018, except the
request was directed at the prison official (C.L.E.G.G.) who was recommended to Plaintiff
by another prison official.

71.    On or about October 9, 2018, Defendant Chauncey responded to IRF #3
identical to Defendant Lawea and stated that "Prop. 57 regulations regarding [NVTS
prisoners] have not changed—if any new direction from headquarters is received that will
affect your eligibility, you will be informed."

72.    On or about October 9, 2018, Plaintiff submitted IRF #3 for the next level of review through the inmate mailing system.

73.    On or about October 15, 2018, Defendant T. Nelson responded to IRF #3 and stated that "Current Prop 57 regulations regarding [NVTS prisoners] still have not changed. If any new direction from headquarters is received that will affect your eligibility, you will be notified." This response ended the informal process in which to file grievances.

74.    On and between the dates of October 15, 2018, and October 21, 2019, Plaintiff pursued and submitted several Inmate Request forms to various prison and BPH officials, but Plaintiff received absolutely no response from any of those Inmate Request forms.

75.    On or about December 1, 2018, Plaintiff received written notification from CDCR that, according to CDCR and BPH policies, Plaintiff was required to receive his EPC hearing no later than one year subsequent to official notification from CDCR.

76.    On or about February 2, 2019, Plaintiff received official notification from CDCR that he would receive his EPC hearing on November 17, 2019. According to the official notification, Plaintiff was required to receive an EPC hearing no later than February 2, 2020.

77.    On May 2, 2019, Plaintiff submitted another Inmate Request form (IRF #4) to the BPH Records Office in order to inquire as to why there was a delay in scheduling him for an EPC hearing in front of the BPH, and the application of GCC to expedite the scheduling of an EPC hearing.

78.    On May 14, 2019, Defendant D. Robinson responded to IRF #4 and stated "you will hear something from the Board; Case Records staff is not involved in the part of the process, see attached Notice of ISLNV referral decision for further information. The

attachment provided absolutely no clarity regarding Plaintiff's eligibility for early parole considerations and the application of GCC.

79.    On May 15, 2018, Plaintiff submitted IRF #4 for the next level of review through the inmate mailing system.

80.    On or about May 20, 2019, Defendant D. Don responded and stated "Per 244.932(a)(2); if your NPED is in the past, you will be scheduled for an initial parole hearing within one year of your referral to Board.  You were referred on February 2, 2019. This is not a Records function." This response ended the informal process in which to file grievances.

81.    On or about October 21, 2019, CDCR submitted to the California Secretary of State new regulations that changed the former regulations that excluded NVTS prisoners from receiving EPC hearings. The new regulations included the following relevant changes: (1) the opportunity for NVTS prisoners to earn 33% good conduct credit, which would only be applied prospectively from the date the new regulation would be implemented; and (2) the opportunity for EPC for NVTS prisoners after serving 20 years of their respective prison sentence.

82.    On or about November 13, 2019, Plaintiff was informed that his scheduled EPC hearing set for November 17, 2019 was postponed to an unknown date in the future.

83.    On or about November 14, 2019, Plaintiff sent several letters to several different departments with the CDCR and BPH to inquire into the unjustifiable postponement of his EPC hearing.

84.    On or about November 18, 2019, Defendant Azevedo responded to one of Plaintiff's November 14, 2019 letters, and responded that "at this time the hearings for that

week have 'all' been postponed. Why and When they will be rescheduled is up to Sacramento. Here @ CMC, we have no control over it.  As soon as we get the information you will be notified."

85.     On or about November 26, 2019, the BPH responded to one of Plaintiff's November 14, 2019 letters (response letter dated November 20, 2019), and informed Plaintiff that the BPH had re-scheduled his EPC hearing for December 31, 2020.

86.     On or about December 8, 2019, Plaintiff submitted an Inmate Request Form (IRF #5) to the local BPH staff at CMCSP.  IFR #5 delineated the new BPH policy pertaining the EPC hearings and that the new BPH policy required Plaintiff to be provided with his EPC hearing prior to February 2, 2020.

87.     On or about December 12, 2019, Defendant S. Hopkins responded to IRF #5 by stating that "per policy, your initial NLT date should be scheduled 12 months prior to your MEPD date is 11-22-2021, your initial NLT date is 12-31-2020."

88.     On or about December 12, 2019, Defendant L. Martinez responded to one of Plaintiff's November 14, 2019 letters, and stated that "we do not do the scheduling here at the institution...any scheduling questions need to be sent to Sacramento."

89.     On or about December 31, 2020, Plaintiff received his EPC hearing by the BPH at CMCSP.  Plaintiff was tentatively granted parole by the BPH on the same day.

90.     On or about February 17, 2021, Plaintiff was released from the custody of the CDCR and was placed on parole for a term of one year.

91.     On or about February 2, 2022, Plaintiff was officially discharged from parole after successfully returning to free society.

///

## FIRST CAUSE OF ACTION

### Governmental Interference With Free Speech

**42 U.S.C. §1983 - First Amendment; Article II, §9, California Constitution**

*(Against Defendants Kathleen Allison, Jeffrey A Beard, Scott Kernan, Ralph Diaz, M. Voong, G. Murphy,  Raymond Madden, J. Gastelo, P. Denny, R. Gibson, M. Denby, L. Chauncey, and Does 1-50)*

92.    Plaintiff realleges and incorporates by reference the allegations and facts set forth in the preceding paragraphs as though fully set forth herein.

93.    Plaintiff possesses a state-created, liberty interest right to file inmate administrative appeals to challenge actions/inactions of prison/state officials that adversely affect Plaintiff.

94.    Plaintiff enjoys the right of free speech protections under the First Amendment of the U.S. Constitution, which is conferred and enforceable against the state of California (and its agents) through the 14th Amendment of the U.S. Constitution.

95.    Plaintiff also enjoys the right of free speech protections under Article II, § 9, of the California Constitution.

96.    Under CDCR regulations, Plaintiff possesses a freedom of speech right and a state-created, liberty interest right to file administrative inmate appeals to challenge actions/inactions of prison/state officials that adversely affect Plaintiff.

97.    Under the California Constitution, Plaintiff possesses a freedom of speech right and a state-created, liberty interest right to file administrative inmate appeals to challenge actions/inactions of prison/state officials that adversely affect Plaintiff.

98.    Under the 1st Amendment of the U.S. Constitution, Plaintiff possesses a freedom of speech right and a liberty interest right to file administrative inmate appeals to challenge actions/inactions of prison/state officials that adversely affect Plaintiff.

99.    Defendants, at all times mentioned herein, prevented Plaintiff from presenting administrative inmate appeal regarding actions/inactions of prison officials (and/or their supervisors) that adversely affected Plaintiff's "health, safety, and welfare."

100.    Defendants, at all times mentioned herein, prevented Plaintiff from presenting administrative inmate appeal regarding "departmental policies, decisions, actions, conditions, or omissions that had a material adverse effect upon his "health, safety, or welfare."

101.    Defendants, at all times mentioned herein, who served in a supervisory capacity are equally responsible for the violations to Plaintiff's free speech rights and state-created, liberty interest rights, where they knew or should have known that Plaintiff's rights were being violated and did nothing to prevent the violations.

102.    Defendants, at all times mentioned herein, acted under the color of state law in preventing Plaintiff from presenting administrative inmate appeals, and by violating Plaintiff's rights to free speech and his state-created, liberty interest rights.

103.    Defendants, at all times mentioned herein, did not act reasonably, or failed to act reasonably, and prevented Plaintiff from presenting administrative inmate appeals regarding actions/inactions of prison officials (and/or their supervisors) that adversely affected Plaintiff's health, safety, and welfare."

104.    On or about February 1, 2017 and February 7, 2017, Plaintiff's First Amendment rights were violated by Defendant Gibson, when Plaintiff's administrative appeal was arbitrarily rejected.

105.    On or about February 14, 2017 and April 5, 2017, Plaintiff's First Amendment rights were violated by Defendant Gibson, when Plaintiff's administrative appeal was capriciously canceled.

106.    On or about April 3, 2017 and May 31, 2017, Plaintiff's First Amendment rights were violated by Defendant Madden, when Plaintiff's administrative appeal was arbitrarily rejected.

107.    On or about June 5, 2017, Plaintiff's First Amendment rights were violated by Defendant Denny, when Plaintiff's administrative appeal was arbitrarily rejected.

108.    On or about June 29, 2017, Plaintiff's First Amendment rights were violated by Defendant Gastelo, when Plaintiff's administrative appeal was arbitrarily rejected.

109.    On or about September 28, 2017, Plaintiff's First Amendment rights were violated by Defendant Murphy and Defendant M. Voong, when Plaintiff's administrative appeal was arbitrarily rejected.

110.    Defendants, at all times mentioned herein, took the action/inactions with the malicious intention to cause a deprivation of Plaintiff's constitutional rights involving free speech and the protected activity of filing inmate administrative appeals.

111.    Defendants, at all times mentioned herein, acted under the state of law while performing discretionary functions, their actions/inactions were taken with the malicious intention to cause a deprivation of constitutional rights or other injury, and their conduct violated "clearly established" statutory or constitutional rights of which a reasonable person would have known.

///

///

///

///

///

## SECOND CAUSE OF ACTION
## DUE PROCESS
### 42 U.S.C. §1983 - Fourteenth Amendment; Art. 1, §7, California Constitution
*(Against Defendants Jerry Brown, Jennifer Shaffer, Kevin Stripling, Kathleen Allison, Jeffrey A Beard, Scott Kernan, Ralph Diaz, L. Chauncey, T. Nelson, D. Robinson, D. Don, C. Azevedo, L. Martinez, S. Hopkins, and Does 1-50)*

112.    Plaintiff realleges and incorporates by reference the allegations and facts set forth in the preceding paragraphs as though fully set forth herein.

113.    Under the Fourteenth Amendment of the U.S. Constitution, Plaintiff possesses the right of due process of the law, which provides a guarantee that a state is mandated to adhere to its own laws.

114.    Defendants, at all times mentioned herein, prevented Plaintiff from enjoying his right to due process protections.

115.    Plaintiff, after the passage of Prop. 57, was denied the due process, state-created liberty interest right to receive an EPC hearing before the BPH.

116.    Defendants, at all times mentioned herein, knowingly and willing violated Plaintiff's due process, state-created liberty interest rights, by refusing to provide, and by delaying in providing, Plaintiff with an EPC hearing in accordance with the mandates that were promulgated after the passage of Prop. 57.

117.    Defendants' actions/inactions, at all times mentioned herein, were not valid or rationally connected to a legitimate and neutral governmental interest.

118.    Defendants, at all times mentioned herein, did not offer an alternative means for the protection of Plaintiff's due process, state-created liberty interest right to an EPC hearing in accordance with the mandates that were promulgated after the passage of Prop. 57.

119.    Had Defendants provided Plaintiff with his due process, state-created liberty interest right to an EPC hearing shortly after the passage of Prop. 57, there would not have been a substantial impact on prison staff, on other inmates' liberty, and on the allocation of limited prison resources.

120.    Defendants' actions/inactions—in neglecting to provide Plaintiff with his due process, state-created liberty interest right to an EPC hearing shortly after the passage of Prop. 57—were an "exaggerated response" to prison concerns and provided no ready alternative that fully accommodated Plaintiff's rights at de minimis.

121.    Defendants' actions/inactions—in neglecting to provide Plaintiff with his due process, state-created liberty interest right to an EPC hearing shortly after the passage of Prop. 57—led to an "atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life."

122.    Defendants, at all times mentioned herein, acted under the state of law while performing discretionary functions, their actions/inactions were taken with the malicious intention to cause a deprivation of constitutional rights or other injury, and their conduct violated "clearly established" statutory or constitutional rights of which a reasonable person would have known.

### THIRD CAUSE OF ACTION
### EQUAL PROTECTION
**42 U.S.C. §1983 - Fourteenth Amendment; Art. 1, §7, California Constitution**
*(Against Defendants Jerry Brown, Jennifer Shaffer, Kevin Stripling, Kathleen Allison, Jeffrey A Beard, Scott Kernan, Ralph Diaz, L. Chauncey, T. Nelson, D. Robinson, D. Don, C. Azevedo, L. Martinez, S. Hopkins, and Does 1-50)*

123.    Plaintiff realleges and incorporates by reference the allegations and facts set forth in the preceding paragraphs as though fully set forth herein.

---

**CIVIL RIGHTS COMPLAINT, 42 USC § 1983**
20

124.    Under the Fourteenth Amendment of the U.S. Constitution, Plaintiff possesses the right of equal protection under the law, which guarantees Plaintiff equal treatment to "similarly situated" persons.

125.    Under Art. 1, §7, California Constitution, Plaintiff possesses the right of equal protection under the law, which guarantees Plaintiff equal treatment to "similarly situated" persons.

126.    Defendants, at all times mentioned herein, did not treat Plaintiff equal to persons who were similarly situated.  In particular, Defendants did not immediately provide Plaintiff with an EPC hearing in accordance with the mandates that were promulgated after the passage of Prop. 57.  Those "similarly situated" persons were classified as "NVSS" prisoners, whose both current and prior convictions were identical or similar to Plaintiff's convictions.

127.    Defendants, at all times mentioned herein, knowingly and willing violated Plaintiff's equal protection rights, by refusing to provide, and by delaying in providing, Plaintiff with an EPC hearing in accordance with the mandates that were promulgated after the passage of Prop. 57.

128.    Defendants' actions/inactions, at all times mentioned herein, were not valid or rationally connected to a legitimate and neutral governmental interest.

129.    Defendants, at all times mentioned herein, did not offer an alternative means for the protection of Plaintiff's equal protection right to an EPC hearing in accordance with the mandates that were promulgated after the passage of Prop. 57.

///

130.    Had Defendants provided Plaintiff with his equal protection right to an EPC hearing shortly after the passage of Prop. 57, there would not have been a substantial impact on prison staff, on inmates' liberty, and on the allocation of limited prison resources.

131.    Defendants' actions/inactions—in neglecting to provide Plaintiff with his equal protection right to an EPC hearing shortly after the passage of Prop. 57—were an "exaggerated response" to prison concerns and provided no ready alternative that fully accommodated Plaintiff's rights at de minimis.

132.    Defendants' actions/inactions—in neglecting to provide Plaintiff with his equal protection right to an EPC hearing shortly after the passage of Prop. 57—led to an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life.

133.    Defendants, at all times mentioned herein, acted under the state of law while performing discretionary functions, their actions/inactions were taken with the malicious intention to cause a deprivation of constitutional rights or other injury, and their conduct violated "clearly established" statutory or constitutional rights of which a reasonable person would have known.

**FOURTH CAUSE OF ACTION**
**CRUEL AND UNUSUAL PUNISHMENT**
**42 U.S.C. §1983 - Eighth Amendment; Art. 1, §17, California Constitution**
*(Against Defendants Jerry Brown, Jennifer Shaffer, Kevin Stripling, Kathleen Allison, Jeffrey A Beard, Scott Kernan, Ralph Diaz, L. Chauncey, T. Nelson, D. Robinson, D. Don, C. Azevedo, L. Martinez, S. Hopkins, and Does 1-50)*

134.    Plaintiff realleges and incorporates by reference the allegations and facts set forth in the preceding paragraphs as though fully set forth herein.

---

**CIVIL RIGHTS COMPLAINT, 42 USC § 1983**

135.    Under the Eighth Amendment of the U.S. Constitution, Plaintiff possesses the right to be free from cruel and unusual punishment.

136.    Under Art. 1, §17, of the California Constitution, Plaintiff possesses the right to be free from cruel and unusual punishment.

137.    Defendants, at all times mentioned herein, imposed cruel and unusual punishment upon Plaintiff by refused to provide Plaintiff with an EPC hearing in accordance with the mandates that were promulgated immediately after the passage of Prop. 57.

138.    Defendants, at all times mentioned herein, physically restrained Plaintiff of his freedom/liberty, by refused to provide Plaintiff with an EPC hearing in accordance with the mandates that were promulgated immediately after the passage of Prop. 57, which constitutes the imposition of cruel and unusual punishment.

139.    Defendants, at all times mentioned herein, knowingly and willing violated Plaintiff's right to be free from cruel and unusual punishment, by refused to provide Plaintiff with an EPC hearing in accordance with the mandates that were promulgated after the passage of Prop. 57

140.    Defendants' actions/inactions, in violating Plaintiff's right to be free from cruel and unusual punishment, were not valid or rationally connected to a legitimate and neutral governmental interest

141.    Defendants, at all times mentioned herein, did not offer an alternative means for the protection of Plaintiff's right to be free from cruel and unusual punishment and simply denied Plaintiff the right to an EPC hearing in violation of the mandates that were promulgated after the passage of Prop. 57.

142.    Had Defendants honored Plaintiff's right to be free from cruel and unusual punishment and simply provided Plaintiff with an EPC hearing shortly after the passage of Prop. 57, there would not have been a substantial impact on prison staff, on other inmates' liberty, and on the allocation of limited prison resources.

143.    Defendants' actions/inactions—in neglecting to honor Plaintiff's right to be free from cruel and unusual punishment, and refusing to provide Plaintiff with his right to an EPC hearing shortly after the passage of Prop. 57—were an "exaggerated response" to prison concerns and provided no ready alternative that fully accommodated Plaintiff's rights at de minimis.

144.    Defendants' actions/inactions—in neglecting to honor Plaintiff's right to be free from cruel and unusual punishment, and refusing to provide Plaintiff with his right to an EPC hearing shortly after the passage of Prop. 57—led to an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life.

145.    Defendants, at all times mentioned herein, acted under the state of law while performing discretionary functions, their actions/inactions were taken with the malicious intention to cause a deprivation of constitutional rights or other injury, and their conduct violated "clearly established" statutory or constitutional rights of which a reasonable person would have known.

146.    Defendants —in neglecting to honor Plaintiff's right to be free from cruel and unusual punishment, and refusing to provide Plaintiff with his right to an EPC hearing shortly after the passage of Prop. 57—did not act in a good faith effort, but, instead, their actions/inactions were intended to maliciously and sadistically cause harm.

147.    Defendants—in neglecting to honor Plaintiff's right to be free from cruel and unusual punishment, and refusing to provide Plaintiff with his right to an EPC hearing shortly after the passage of Prop. 57—acted with a sufficiently culpable state of mind.

148.    Defendants' actions/inactions—in neglecting to honor Plaintiff's right to be free from cruel and unusual punishment, and refusing to provide Plaintiff with his right to an EPC hearing shortly after the passage of Prop. 57—were not for a legitimate penological purpose, but were malicious and sadistic for the very purpose of causing harm, and the harm caused was more than "de minimis" because Plaintiff was physically restrained from enjoying his freedom/liberty for more than 4 years.

### DECLARATORY AND INJUCTIVE RELIEF
### RIGHT TO BEAR ARMS
#### 42 U.S.C. §1983 - Second Amendment Violation
#### (18 U.S.C. §922(g); California Penal Code 29800 and 29805)

149.    Plaintiff realleges and incorporates by reference the allegations and facts set forth in the preceding paragraphs as though fully set forth herein.

150.    The Supreme Court has held that "the Second Amendment protects the right to keep and bear arms for the purpose of self-defense." (*McDonald v. City of Chicago* (2010) 130 S. Ct. 3020, 3021.)

151.    Plaintiff's right to bear arms is being infringed under both federal and state law. (18 U.S.C. §922(g); and California Penal Code 29800 and 29805.)

152.    Plaintiff has never committed a violent or gun related offense, nor has Plaintiff ever been convicted of a violent or gun related offense.

153.    Therefore, both 18 U.S.C. § 922(g), and California Penal Code §§ 29800 and 29805 violate Plaintiff's constitutional right to bear arms, where the prohibitive federal and

state statutes place unreasonable restrictions on Plaintiff's Second Amendment right, and the Second Amendment right "shall not be infringed" under the United States Constitution.

## PRAYER

*WHEREFORE, Plaintiff prays for judgment against each Defendants, jointly and severally, as follows:*

1.     For compensatory damages in an amount to be determined according to proof;

2.     For punitive, special, and exemplary damage in an amount not less than 2 million ($2,000,00.00 USD) dollars;

3.     For declaratory and injunctive relief, through the restoration of Plaintiff's right to bear arms under the Second Amendment of the United States Constitution;

4.     For costs of suit and attorney's fees as provided by law; and

5.     For such other relief as the Court deems just and proper.

Dated: February 15, 2023                    Respectfully submitted,


James Daniel Alexander, Plaintiff in pro per

---

**CIVIL RIGHTS COMPLAINT, 42 USC § 1983**

26